FILED

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

10:12 am, 3/9/06

Joyce W. Harris
Clerk of Court

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| DONALD ALVIN CARLSON, | ) | Case No. 04-22255 |
| | ) | CHAPTER 7 |
| Debtor. | ) | |
| | ) | |
| COBRA WELL TESTERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 05-2013 |
| | ) | |
| DONALD ALVIN CARLSON, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION ON COMPLAINT

On November 30, 2005, this case came before the court for a trial on the Complaint for Determination of Dischargeability. The plaintiff, Cobra Well Testers, LLC (Cobra) appeared through its counsel, Stephen R. Winship. The debtor/defendant, Donald Alvin Carlson (Carlson), appeared with counsel, Janet Tyler. The court has considered the testimony and other evidence, the arguments of the parties and the applicable law, and concludes judgment should be entered for the defendant.

### Jurisdiction

The court has jurisdiction over this adversary complaint pursuant to 28 U.S.C. §§ 157(a) & 1334(a). This is a core proceeding under § 157 (b)(2)(I) & (J).

## Findings of Fact

Prior to the filing of his voluntary chapter 7 petition on November 18, 2004, Carlson was engaged in an oil field service business. In December 2003, he decided to shut down the business and sell the assets.

The Contract

Rick Adams (Adams) and Kelly Adams are the owners of Cobra. Adams was previously an employee of Carlson's. In early 2004, Cobra negotiated a contract with Carlson to purchase Carlson's oil field equipment, vehicles and other items (Sale Assets). Adams hired Don Smith, an acquaintance of Carlson and Adams, to appraise the property subject to the sale.

The Sale Assets were located in a storage yard in Rock Springs, Wyoming owned by Jim Rasmussen. On Cobra's behalf and with Adams, Smith went to the yard and inspected the Sale Assets. Carlson was not present during the inspection. Smith's Appraisal, dated January 26, 2004, valued the Sale Assets at a total value of $315,950.00. The list of appraised items included, among other things: "2 Computers w/ Flow-Test Programs;" "1 Welder;" "1 Mack (1960) Yard Truck w/ wench and poles (Not for road use);" "9 Camper/Office Trailers;" a Chevrolet truck and a Dodge truck, and some flow back manifolds and line pipe. Adams believed Cobra was purchasing two laptop computers, but he apparently never saw these laptops. Smith viewed and appraised the computers and did

not identify them as laptops. The parties understood that certain Ingersoll Rand portable light plants were subject to a lease payoff.

Cobra and Carlson negotiated a purchase price of $155,000, starting from Carlson's asking price of $255,000. The August 2, 2004 Contract for Sale of Business Assets (Contract), prepared by Cobra, contained a list of assets which tracked the Sale Assets on the Appraisal. Carlson, as the seller, warranted that there were no liabilities attached to the Sale Assets except to the extent reflected on the titles to titled equipment. The Contract also provided that the Sale Assets were purchased "As Is" and "With All Faults," and that the only applicable Seller's warranties were those contained in the Contract, all others without force or effect. It is not clear whether Carlson understood or even read the Contract.

Carlson knew he was to deliver clear title to the Mack Truck. However, the title had not been transferred to his name because he had not paid the sales tax due when he purchased the truck. He testified that he simply did not get it taken care of.

The closing occurred on August 24, 2004. Cobra provided Carlson with a Bill of Sale that contained the same list of Sale Assets as the Appraisal and the Contract. Carlson had not previously seen the Bill of Sale. The Bill of Sale contained a Seller's Warranty that the property was free from all liens and encumbrances. Carlson attended the closing, signed the Bill of Sale, and provided Cobra with a stack of vehicle titles, including titles for vehicles not part of the Sale Assets.

Carlson received $108,733 cash proceeds from the sale, after payment of rent due to Mr. Rasmussen for storage and the payment of a State of Wyoming tax lien. The remaining sale proceeds were deposited in Carlson's attorney's trust account. According to an accounting filed with the bankruptcy petition, from the proceeds Carlson paid a priority federal income tax claim, attorney fees, past due wages to his former spouse, Mary Carlson, and the payoff on the lease for the Ingersoll Rand light plants. Carlson received $3,500 which he noted were used for living expenses.

Until Carlson shut down his business, his former spouse, Mary Carlson, did the business bookkeeping. Carlson testified that Mary destroyed the records from the business after her employment terminated. At that time she was owed about $20,000 in past due wages. Carlson obtained the vehicles titles provided to Cobra at the closing from Mary, some of which were newly issued on old property. Carlson did not review the titles but simply gave Cobra all the titles he had in his possession.

After the sale closed, Cobra took possession of the Sale Assets. Various items on the list of Sale Assets were not found at the storage lot. The computers were not laptops but older personal computers, the Mack Truck had sales tax due on it, a welder was purportedly missing, and various items were in disrepair. The parties agreed to a value of $24,000 for the missing items.

The Storage Lot

Until the closing on August 24, 2004, the Sale Assets were located at Mr. Rasmussen's storage lot in Rock Springs, Wyoming.  Mr. Rasmussen conducted a repair and towing business from the location and shared a building with Carlson.  Others apparently operated a business from the storage yard as well.  Most of Carlson's assets were located in a building with a broken garage door and according to Rasmussen, an ineffective lock.  Rasmussen, Carlson, a renter, Carlson's sons, Mary Carlson and others had keys and access to the yard and possible access to the building.

Carlson did not pay the rent of $1,000 per month from July 2003 forward and had not been to the lot since February 2004.  Adams did not have a key to the yard.

During 2004, Rasmussen stored around 100 vehicles in the yard.  He testified that there were frequent break-ins by persons cutting through the fence and regularly stealing stereos and other equipment from the vehicles.  He also testified that the door to Carlson's shop was not completely secure.  Apparently there had also been a murder at the yard not long after the closing of the Contract.

In order to prevent Rasmussen from putting a storage lien on the Sale Assets, especially the portable light towers, Cobra paid Rasmussen some of the rental payments owed to Rasmussen by Carlson.  These rent payments were reimbursed to Cobra from the sale proceeds.

The Bankruptcy Petition

Carlson testified that he had consulted bankruptcy counsel in late summer of 2004. He determined to file a chapter 7 petition in November 2004 after discussing the amount of federal income tax he owed with an Internal Revenue Service agent.  The taxes exceeded $200,000, some of which were apparently dischargeable.

On the November 18, 2004 Petition and Schedules, Carlson did not list the $3,500 he received from the sale proceeds.  However, on a document accounting for the sale proceeds attached to the Statement of Financial Affairs (SOFA), the $3,500 was noted as used for living expenses.  Carlson also discussed the $3,500 amount with the chapter 7 trustee at the initial meeting of creditors and apparently provided her with an accounting of how he used the funds.  Part of the money was to pay a lease payment due on a truck owned by Carlson's LLC.  That payment was not listed on paragraph three or ten of the SOFA.

Also, Carlson did not schedule two 1998 Chevrolet trucks or five travel trailers (a 1957 LEIT, a 1970 Aris, a 1966 Moni, a 1980 Coah, and a 1975 Bumper).  The titles to these vehicles were part of the packet of titles Carlson gave to Cobra at the closing.  One of the Chevrolet trucks actually was included in the Sale Assets, but the other was not.  Finally, Carlson did not schedule a lawsuit against himself and another former spouse, Teresa Carlson, filed in the Third Judicial District Court for Sweetwater County, Wyoming.  The judgment in that case was entered June 14, 2004, and a Satisfaction of Judgment was entered on May 20, 2004.

At the trial, Carlson testified that the nine camper trailers sold to Cobra were not specifically identified in the Sale Assets, and that Mary Carlson provided titles to the trailers sold to Cobra and to other trailers which had been torn up and junked. Carlson had no clear recollection of the whereabouts of the unscheduled crew trailers for which titles were available. He stated they had likely been taken to the dump.

Carlson also testified at the trial that one of the 1998 Chevrolets, the UTLP, was his son's Blazer. Carlson had a verbal commitment to transfer the title in 2003, but did not follow through. The failure to schedule this Blazer was stated to be a misunderstanding because Carlson believed it was not his vehicle, even though he had legal title.

### Conclusions of Law

Cobra objects to Carlson's discharge under 11 U.S.C. § 727(a)(2), (a)(3), (a)(4), and (a)(5). Cobra also objects to the dischargeability of the debt for the missing equipment under § 523(a)(2)(A) & (a)(6).

The court will address the § 727 claims first. The moving creditor has the burden to prove the elements of a § 727 claim by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 661 (1991); *In re Serafini*, 938 F.2d 1156 (10th Cir. 1991). Once the creditor establishes the acts complained of, the debtor has the burden to produce a credible explanation of his actions. *In re Martin*, 88 B.R. 319, 321 (D. Colo. 1988).

Section 727 (a)(2)

Cobra contends Carlson should be denied a chapter 7 discharge under § 727(a)(2)(A) which states: "the court shall grant the debtor a discharge unless, the debtor, with intent to hinder, delay or defraud a creditor . . . has transferred, removed . . . or concealed . . . property of the debtor, within one year before the filing of the petition." In the Tenth Circuit, a creditor must prove *actual* intent to support such a claim. *In re Carey*, 938 F.2d 1073, 1077 (10th Cir. 1991) (emphasis in original). Full disclosure of the transactions may negate a finding of fraud. *Id*.

Cobra contends Carlson deliberately and intentionally concealed the transfer of the 1998 Chevrolet Blazer to his son in an attempt to defraud the creditors. Carlson's explanation of the transfer is satisfactory. He believed the vehicle belonged to his son and that he had an obligation to transfer the title to his son. There is no showing of intent to defraud or to hide assets.

Section 727 (a)(3)

Cobra objects to Carlson's discharge under § 727(a)(3) which provides that the court shall deny the debtor a discharge if the debtor has "failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained unless such act or failure was justified under all of the circumstances of the case." The scope of the debtor's duty depends on a case-by-case determination. *In re Ogden*, 251 B.R. 441, 1999 WL 282732 (10th Cir. BAP 1999).

In this case, the debtor had no business records by the time he filed the chapter 7 petition. However, the only evidence before the court is that the previous business records were destroyed by the debtor's former spouse, Mary Carlson. Further, there is no evidence that the business records may have been material to any questions raised about the debtor's financial condition. The court concludes the debtor should not be denied a discharge because a former spouse destroyed his business records.

Section 727(a)(4)

The plaintiff also argues the debtor's discharge should be denied under § 727(a)(4)(A) because he "knowingly and fraudulently, in or in connection with the case made a false oath or account." Cobra contends Carlson filed false bankruptcy schedules and a false SOFA because he did not schedule the lawsuit, the $3,500 cash on hand, the camper trailers or the truck transfer to his son.

To deny a discharge, material omissions and mischaracterizations must be made willfully with fraudulent intent. *In re Calder*, 907 F.2d 953, 956 (10th Cir. 1990). Post petition disclosure may be evidence of innocent intent. *In re Kelly*, 135 B.R. 459, 461 (Bankr. S.D.N.Y. 1992).

Cobra failed to establish fraudulent intent under this section. The debtor explained the truck transfer, listed the $3,500 cash on the SOFA, explained the use of the cash to the trustee's satisfaction, explained the reason that there were no camper trailers to schedule, and showed the lawsuit was over one year old.

Section 727(a)(5)

Lastly, Cobra claims Carlson should be denied a discharge under § 727(a)(5) which

provides that the court shall grant the discharge unless "the debtor has failed to explain

satisfactorily . . .  any loss of assets or deficiency of assets to meet the debtor's liabilities."

Cobra failed to show fraudulent intent.  Cobra failed to show a loss of assets and Carlson

addressed and explained each and every loss or deficiency of assets in question.  There is no

claim under this section.

Section 523(a)(2)(A)

Cobra did not specify the applicable subsection of § 523(a)(2) under which it brings

its claim.  However, § 523(a)(2)(B) appears inapplicable under the facts of this case.

Cobra contends the debt is not dischargeable, presumably under § 523(a)(2)(A) which

provides:

> A discharge under section 727 . . . does not discharge an individual debtor
> from any debt
>
> > (2) for money, property, [or] services . . . to the extent obtained by
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a
> > > statement respecting the debtor's . . . financial condition.

A creditor has the burden of proof under § 523(a) by a preponderance of the evidence.

*Grogan v. Garner*, 111 S. Ct. at 659.  Exceptions to discharge are construed narrowly in

order to protect the debtor's fresh start.  *In re Mullet*, 817 F.2d 677, 680 (10th Cir. 1987).  A

creditor must prove the debtor made a false representation with the intent to deceive the

creditor, *In re Young*, 91 F.3d 1367, 1373 (10th Cir. 1996), and the creditor justifiably relied on the representation. *Field v. Mans*, 516 U.S. 59, 116 S. Ct. 437, 439 (1995).

This claim fails for want of fraudulent intent. The appraisal and list of Sale Assets was prepared by Cobra's agent, and Cobra did not inspect the assets against the list. The Contract and Bill of Sale containing the asset list was prepared by Cobra and its agent and not signed by the debtor until months after the list was prepared. The debtor did not make any pre-closing assertions as to the condition of the assets or the extent of the assets. The court believes Carlson signed the documents presented to him by Cobra in a simple attempt to get the business assets sold and pay down his IRS debt. A warranty of title is not fraud. This is a case of contract default at best.

Section 523(a)(6)

Under § 523(a)(6), the debtor is not discharged from a debt for "willful and malicious injury by the debtor to another entity or to the property of another entity[.]" The United States Supreme Court ruled in the case of *Kawaahau v. Geiger*, 523 U.S. 57, 118 S. Ct. 974, 977 (1998) that the willfulness element requires proof of a deliberate or intentional injury, not merely a deliberate or intentional act that results in injury. As with intentional torts, the debtor must have intended the consequences of his act. *Id.*

A debt may be nondischargeable if the debtor wrongfully converts assets to his own use. *In re Gagle*, 230 B.R. 174 (Bankr. D. Utah 1999). Here, Cobra argues the alleged conversion was "constructive."

First, constructive conversion, whatever that is, is not grounds for liability under this section. Either the debtor converted the assets or directed their conversion or he did not.

Second, the debtor did not inspect the Sale Assets at the time of the appraisal in January 2004. He did not go to the storage lot from February through the date of the sale. Mr. Rasmussen testified that many people had access; burglary and theft were common; and the locked premises were not secure. This claim fails for lack of proof of access, intent and/or actual asset disappearance.

The court will enter judgment for the defendant on all claims for relief.

DATED this ___9___ day of March, 2006.

By the Court

_____
HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
    Stephen Winship
    Janet Tyler